UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>           )<br>     Plaintiff, )<br>           )<br>     v.    )<br>           )<br>CAMERON LOVE, )<br>           )<br>     Defendant. ) | <br><br><br><br>No. 1:25-cr-00045-JPH-MJD<br><br>-01<br><br> |

**ORDER ON MOTION TO SUPPRESS IDENTIFICATION**

Defendant Cameron Love, proceeding *pro se*, has filed a motion to suppress evidence of an identification conducted by the Indianapolis Metropolitan Police Department. Dkt. 148. For the reasons below, that motion is **DENIED**.

**I.
Facts and Background**

Mr. Love is charged with committing a January 16, 2025 robbery of a Burger King in Indianapolis, with brandishing a firearm in relation to that offense, and with felon in possession of a firearm. Dkt. 124 (superseding indictment).

After the robbery, a victim called 911 and reported that the robber left in a black Chevrolet Cruze. Govt. Ex. 4. Less than a half hour later, an IMPD officer attempted to pull over a car matching that description, spurring a high-speed chase lasting nearly twenty minutes. Govt. Ex. 10 at 0:00–19:45. The car eventually stopped in the center of the road in Carmel, Indiana. *Id.*

During the police chase, another IMPD officer interviewed two Burger King employees, who said that the robber wore a white shirt, black coat, and brown or tan pants.  Dkt. 183 at 1–2 (Phillips–Stackman aff.); Govt. Ex. 3; Govt. Ex. 6.  The officer then brought the witnesses to the end of the high-speed pursuit in Carmel, telling them that "police had detained some individuals who may or may not have been involved in the robbery." Dkt. 183 at 2.

"Passer-by pedestrians were driving by cheering the police as the victims were arriving to the middle of the street."  Dkt. 172 at 3 (Love aff.).  There, Mr. Love "was handcuffed, standing in front of a motorcade of multiple police department vehicles," *id.* at 1, while the witnesses "had the opportunity to see his face and examine his appearance," dkt. 183 at 2.  Mr. Love was wearing a white shirt, black coat, and tan pants.  Dkt. 183-1.  The witnesses both identified Mr. Love as the robber.  *See id.* at 2.  The witnesses did not review surveillance footage before the identification.  Dkt. 172 at 2.

Mr. Love has filed a motion to suppress evidence of this identification. Dkt. 148.

## II.
## Analysis

Mr. Love argues that evidence of this identification must be suppressed because it was "unnecessarily suggestive" and he did not have counsel present. Dkt. 148 at 1–3.  The government responds that a prompt identification was necessary in this situation and that the identifications are reliable.  Dkt. 155.

2

Due process concerns related to an identification "arise only when law enforcement officers use[ ] an identification procedure that is *both* suggestive and unnecessary." *Sexton v. Beaudreaux*, 585 U.S. 961, 965–66 (2018). "It is not enough that the procedure may have in some respects fallen short of the ideal." *Id.* Instead, "[t]o be 'impermissibly suggestive,' the procedure must give rise to a very substantial likelihood of irreparable misidentification." *Id.* Whether the Due Process clause requires suppression of an identification thus follows a two-step analysis. *United States v. Vines*, 9 F.4th 500, 506 (7th Cir. 2021). First, the identification procedure must have been unnecessarily suggestive. *Id.* Second, the identification must be unreliable under several factors, "creat[ing] a substantial likelihood of misidentification." *Id.*

"The first prong focuses on police conduct—its suggestiveness and necessity in the specific situation at hand." *United States v. Sanders*, 708 F.3d 976, 984 (7th Cir. 2013). Here, the government agrees that there was some suggestiveness in the identification because law enforcement conducted a "show up" identification by bringing the witnesses to Mr. Love. Dkt. 155 at 4. "A show-up occurs when only one suspect is presented to the witness" and "is inherently suggestive because the witness is likely to be influenced by the fact that that the police appear to believe that the person . . . is guilty." *United States v. Funches*, 84 F.3d 249, 254 (7th Cir. 1996).

But show-up identifications "are proper and not unduly suggestive under certain circumstances." *United States v. Clark*, 989 F.2d 1490, 1495 (7th Cir. 1993); *accord United States v. Edwards*, 34 F.4th 570, 581 (7th Cir. 2022).

3

That includes when law enforcement is "confirming that an individual apprehended close in time and proximity to the scene of a crime is, in fact, the suspected perpetrator of the crime." *United States v. Hawkins*, 499 F.3d 703, 707 (7th Cir. 2007). "Such identifications both protect innocent individuals from unnecessary arrest and help authorities determine whether they must continue to search for the actual perpetrator." *Hawkins*, 499 F.3d at 708. And they can "allow identification before the suspect has altered his appearance and while the witness' memory is fresh." *United States v. Sleet*, 54 F.3d 303, 309 (7th Cir. 1995).

So, in *Hawkins*, the Seventh Circuit held that a show-up identification was necessary and not unduly suggestive. *Hawkins*, 499 F.3d at 708; *see Sanders*, 708 F.3d at 986 ("As discussed, a procedure that is suggestive—even when inherently so—may still be necessary."). Mr. Hawkins had been apprehended near the robbery and the show-up occurred within an hour after the crime. *Hawkins*, 499 F.3d at 708. And the officers "took no steps other than the showup itself to suggest that Mr. Hawkins was the robber," such as having him put on the ski mask found near the robbery or showing the witness the gun used in the robbery. *Id.*

The same is true here. Mr. Love's identification happened shortly after the robbery, when Mr. Love was detained at the end of a high-speed pursuit. *See* dkt. 172. While Mr. Love was handcuffed and standing in front of several police vehicles, *id.*, that is part of the identification process when law enforcement has found a suspect and needs "to determine whether their

4

investigation is on the right track," *see Hawkins*, 499 F.3d at 708.  The witnesses did not see surveillance video before the identification, dkt. 172 at 2, and Mr. Love does not allege any steps officers took to make him appear to be the person who robbed the Burger King, *see Hawkins*, 499 F.3d at 708.  Instead, officers needed to set up an identification while the witnesses' memories were strongest and before a suspect could change his appearance.  *See Sleet*, 54 F.3d at 309.  And if Mr. Love was not the person who robbed the Burger King, the officers needed to know that promptly so their investigation could continue.  *See Hawkins*, 499 F.3d at 708.  So, in this situation, Mr. Love's "claim falters because he cannot prove that the procedure, [while] suggestive, was also unnecessary."  *Sanders*, 708 F.3d at 986.

Because Mr. Love's motion fails on the first prong, the Court need not address the reliability of the identification.  *Sanders*, 708 F.3d at 984 ("As the Supreme Court recently reiterated, courts will only consider the second prong if a challenged procedure does not pass muster under the first."); *accord United States v. Sleet*, 54 F.3d 303, 309 (7th Cir. 1995).[1]

Finally, Mr. Love was not entitled to have counsel present at the identification, as he argues. *See* dkt. 148 at 3 (citing *United States v. Wade*, which held that counsel should have been present at a post-indictment lineup, 388 U.S. 218 (1967)).  Instead, "it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the

---

[1] Mr. Love has not requested a hearing or contested any material facts, so no hearing is required.  *See* dkt. 148; dkt. 173; *United States v. Edgeworth*, 889 F.3d 350, 353 (7th Cir. 2018).

time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688, 690 (1972) (explaining that there is no right to counsel at an identification before the commencement of prosecution).[2]

The show-up identification of Mr. Love therefore is not subject to suppression, and whether it is believed is a question for the jury. *See Sanders*, 708 F.3d at 987 ("After we are convinced that no constitutional violation occurred, the jury, not the judge, determines the reliability of evidence.").

### III. Conclusion

Mr. Love's motion to suppress identification is **DENIED**. Dkt. [148].

**SO ORDERED.**

Date: 1/16/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

CAMERON LOVE
USMS# 67207-511
CLARK COUNTY JAIL
CLARK COUNTY JAIL
Inmate Mail/Parcels
501 East Court Avenue
Jeffersonville, IN 47130

All electronically registered counsel

---

[2] Mr. Love also argues that the Court should consider dismissing the indictment against him because of constitutional violations in the identification, including his not having counsel present. Because the identification need not be suppressed and because his constitutional right to counsel was not violated, the Court does not further address Mr. Love's request that the indictment be dismissed for those reasons. *Cf. United States v. Morrison*, 449 U.S. 361, 365–66 (1981) (explaining that "the remedy characteristically imposed" for a constitutional violation "is not to dismiss the indictment but to suppress the evidence").

6